**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **LAVARIUS K. MCFADDEN,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**WEXFORD HEALTH SOURCES, INC., JANE DOE RN NURSE, JOHN DOE NP NURSE, and JOHN DOE MD,**<br><br>**Defendants.** | **Case No. 25-cv-1760-NJR** |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Lavarius K. McFadden, an inmate of the Illinois Department of Corrections who is currently incarcerated at Pontiac Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while incarcerated at Menard Correctional Center. McFadden's Complaint (Doc. 1) and Amended Complaint (Doc. 19), both alleging deliberate indifference in the treatment of his tonsils, were dismissed without prejudice for failure to state a claim (Docs. 11, 23). McFadden was granted leave to file a Second Amended Complaint (Doc. 23). In his Second Amended Complaint, he again alleges that medical providers at Menard were deliberately indifferent to his serious medical needs.

Since the filing of his Second Amended Complaint, McFadden has filed two "exhibits" (Docs. 28, 29). These filings seek to explain his current condition and provide medical records. McFadden also filed an additional statement which the Court labeled as

a motion to amend (Doc. 30). McFadden alleges that since his tonsillectomy he has developed an upper respiratory infection that his current medications have failed to treat. McFadden inquires as to whether he can add an additional claim for his current care. To the extent McFadden seeks to add additional claims or exhibits, his requests are denied because the Court does not accept piecemeal amendments to the pleading. And, to the extent that McFadden takes issue with his current treatment at Pontiac, those potential claims would involve different defendants and are factually unrelated to the claims in his current lawsuit. He would need to file a new lawsuit to pursue those claims.

This case is now before the Court for preliminary review of the Second Amended Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

**The Second Amended Complaint**

On August 7, 2024, McFadden spoke to an unnamed LPN about issues with his tonsils (Doc. 27, p. 6). McFadden contends that by May 2025, he had recurring acute tonsillitis that had become increasingly painful (*Id.*). On May 29, 2025, he spoke to Jane Doe RN Nurse (McFadden identifies this nurse by the initials M.B.) about complications with his throat, including severe pain and bleeding (*Id.*). He alleges that he received little to no medical treatment in response to his complaints but acknowledges that the Jane Doe Nurse (M.B.) referred him to the doctor (*Id.* at pp. 6-7).

On June 12, 2025, he spoke to a John Doe nurse practitioner about his tonsils.[1] The nurse practitioner prescribed Claritin and referred him to an ENT (Doc. 27, p. 7). On July 10, 2025, he was scheduled for an ENT evaluation. On July 17, 2025, he spoke to another nurse and she noted that he was scheduled for an ENT evaluation (*Id*.). On August 12, 2025, McFadden was sent out to the ENT and met with Drs. Joshue Hentzelman and Joseph Kleinsmith, who performed an endoscopy (*Id*.). They determined that McFadden needed a tonsillectomy and adenoidectomy to treat his recurrent tonsillitis (*Id*.). They ordered a CT scan prior to surgery.

On August 20, 2025, McFadden met with John Doe MD (who McFadden identifies by his initials (J.R.). Dr. John Doe (J.R.) informed McFadden that "IDOC" would not pay for the tonsillectomy nor send inmates out for that type of surgery. Dr. John Doe (J.R.) also indicated that McFadden would not be sent out for surgery because there was no medical procedure that would alleviate his tonsillitis (*Id*.).

On September 1, 2025, McFadden met with an unknown nurse about his tonsillitis; she prescribed him Guafensin and referred him to the medical doctor (Doc. 27, p. 8). On September 12, McFadden saw Jane Doe Nurse (M.B.) about his tonsils (*Id*.). He alleges that she provided "little to no medical treatment." (*Id*.).

On October 14, 2025, McFadden transferred to Pontiac Correctional Center (Doc. 27, p. 8). Shortly after arriving, McFadden complained to a nurse about his tonsils,

---

[1] McFadden's statement of claim identifies this individual as a "doe nurse," but in describing each defendant, McFadden indicates that he saw the John Doe Nurse Practitioner on June 12, 2025, the same date as the "doe nurse" (Doc. 27, p. 2).

and he was scheduled to see a nurse practitioner. He was ultimately seen by several providers at Pontiac and referred to an ENT. McFadden indicates that he had a tonsillectomy on April 27, 2026 (*Id.*). He alleges that defendants at Menard had no intention of ever allowing him to have proper treatment for his condition. As a result of their lack of action, McFadden alleges that he developed a kidney and urinary infection. He fails to indicate when he developed this infection. He also claims permanent injury to his voice.

**Preliminary Dismissals**

McFadden identifies Wexford Health Sources, Inc. as a defendant in the case caption but fails to include any allegations against the company in his statement of claim. He merely alleges that Dr. John Doe told him that "IDOC" would not pay for his surgery (Doc. 27, p. 7). Wexford can only be liable for deliberate indifference if the company had a policy or practice that caused the constitutional violation. *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982) (applying municipal liability to private corporations performing governmental functions); *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). McFadden fails to point to any policy or practice of Wexford that led to the denial of his surgery. Thus, any potential claim against Wexford is **DISMISSED without prejudice**.

**Discussion**

Based on the allegations in the Second Amended Complaint, the Court designates the following count:

**Count 1:** **Eighth Amendment deliberate indifference to medical needs claim against Jane Doe Nurse (M.B.), John Doe Nurse Practitioner, and Dr. John Doe (J.R) for denying McFadden medical care for his tonsillitis.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Second Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard**.[2]

To successfully state an Eighth Amendment claim of deliberate indifference to medical needs, a plaintiff must plead that he suffered from "an objectively serious medical condition" and that a "state official was deliberately… indifferent" to that condition. *See Giles v. Godinez*, 914 F. 3d 1040, 1049 (7th Cir. 2019). A plaintiff must demonstrate that the defendants' actions were more than negligent, something approaching intentional wrongdoing or recklessness. *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012). Further, a plaintiff must demonstrate that each defendant had knowledge of his condition and was personally involved in his care. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009).

McFadden fails to state a claim against either the Nurse Practitioner or the Jane Doe Nurse (M.B.). He alleges that he saw the nurse practitioner on one occasion, and he prescribed Claritin for McFadden's symptoms and referred him to the ENT (Doc. 27, p. 7).

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

Such actions do not rise to the level of deliberate indifference. Similarly, he saw Jane Doe Nurse (M.B.) on May 29, 2025, and she referred him to the doctor (*Id*. at pp. 6-7). And as McFadden notes, he saw the nurse practitioner shortly thereafter on June 12. He also saw Jane Doe Nurse (M.B.) on another occasion on September 12, 2025 (*Id*. at p. 8). Although McFadden alleges that on this occasion the nurse provided him with "little to no medical treatment," McFadden provides limited allegations about this interaction. He only notes that he again complained about tonsil complications. There are no allegations to indicate exactly what he told the nurse or her response, if any. He acknowledges that she again referred him to the medical doctor (*Id*. at p. 8). There are simply no allegations to suggest that she acted with deliberate indifference. Thus, Count 1 is **DISMISSED** as to Jane Doe Nurse (M.B.) and John Doe Nurse Practitioner.

But McFadden does state a viable claim for deliberate indifference against Dr. John Doe (J.R.). McFadden alleges that despite the ENTs recommending surgery and ordering additional testing, Dr. John Doe denied the request for surgery because IDOC would not pay for it and stated the surgery would not alleviate McFadden's conditions. His actions could amount to deliberate indifference. Thus, Count 1 shall proceed against Dr. John Doe (J.R.). The Court **ADDS** the current warden of Menard, Matthew Plummer (official capacity only), to respond to discovery aimed at identifying Dr. John Doe.

**<u>Disposition</u>**

For the reasons stated above, Count 1 shall proceed against Dr. John Doe (J.R.). Matthew Plummer is **ADDED** to the case, in his official capacity only, in order to help identify the John Doe.

The Clerk of Court shall prepare for Matthew Plummer (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Second Amended Complaint, and this Memorandum and Order to Plummer at Menard. If Plummer fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on him, and the Court will require him to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Because Matthew Plummer is in the case only to respond to discovery regarding the identity of the defendant doctor, he does not need to file an Answer. Once he has entered his appearance, the Court will enter a scheduling order setting forth discovery deadlines for identifying Dr. John Doe.

Because McFadden's claims involve his medical care, the Clerk of Court is **DIRECTED** to enter the Court's standard HIPAA Qualified Protective Order.

If judgment is rendered against McFadden, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, McFadden is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing

and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: October 9, 2026**

**NANCY J. ROSENSTENGEL**
**United States District Judge**

**Notice to Plaintiff**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Second Amended Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Amended Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**